No. 15-1056

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

## ALEXANDER S. ORENSHTEYN
*Plaintiff-Appellee*

v.

## CITRIX SYSTEMS, INC.
*Defendant-Appellee*

v.

## DAVID FINK, TIMOTHY W. JOHNSON,
*Sanctioned Parties-Appellants*

---

Appeal from the United States District Court for the Southern District of Florida in Civil Action No. 02-CV-60478 WJZ, District Judge William J. Zlock

---

## REPLY BRIEF OF DAVID FINK, TIMOTHY W. JOHNSON,
## SANCTIONED PARTIES-APPELLANTS

---

Date: March 16, 2015
David Fink
7519 Apache Plume
Houston, TX 77071
(713) 729-4991

*Attorney for Sanctioned*
*Parties-Appellants*
*David Fink and Timothy W. Johnson*

## CERTIFICATE OF INTEREST

Counsel for the Sanctioned-Parties Appellant David Fink and Timothy W. certifies the following:

1.    The full name of every party represented by me is:

    a.    David Fink

    b.    Timothy W. Johnson

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    Not Applicable

3.    All parent corporations in any publicly held companies that own 10 percent or more of the stock of the parties represented by me are:

    Not Applicable

4.    The names of all law firms and the partners are associates who appeared for the parties now represented by me in the trial court or are expected to appear in this case are:

    a.    David Fink

    b.    Timothy W. Johnson

    c.    Fink & Johnson

Dated: March 16, 2015

    /s/ David Fink
    DAVID FINK
    Sanctioned Parties-Appellants

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................. i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES ............................................................... iii

ARGUMENT ....................................................................................... 1

I.   The Issues Regarding Orenshteyn's Pre-filing Conversations With the Plaintiff Did Not Warrant Sanctions Under 28 U.S.C. § 1927....................... 1

  A.  Citrix Reargues Issues that were Decided in the First Appeal but Fails to Identify any Actual Proceeding that was Multiplied.................................. 1

  B.  The Sanction's Awarded by the District Court have no Nexus to Allegedly Multiplied Proceedings.......................................................... 6

II.  Sanctions Under the District Court's Inherent Powers were Unwarranted.... 8

III. Due to Citrix's Conduct in this Case, the Doctrine of Unclean Hands Mitigates Against Awarding Sanctions ........................................................ 9

  IV. CONCLUSION.............................................................................. 13

CERTIFICATE OF SERVICE .......................................................... 14

CERTIFICATE OF COMPLIANCE .................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Dial HD, Inc. v. ClearOne Commc'ns, Inc.,*
536 F.App'x 927 (11th Cir. 2013)............................................................................. 7, 8

*Orenshteyn v. Citrix Sys., Inc.,*
precision Fed.Appx. 621 (Fed. Cir. July 28, 2009)……………...………2, 3, 4, 6

*Precision Instrument v. Automotive Maintenance Machinery,*
324 U.S. 806 (1945) ................................................................................................ 12, 13

**STATUTES**

28 U.S.C. § 1927………………………………………………1, 4, 5, 6, 7, 12

**FEDERAL RULES**

Fed. R. Civ. P. 11……………………………………………………5, 6

## **ARGUMENT**

**I.    The Issues Regarding Orenshteyn's Pre-filing Conversations With the Plaintiff Did Not Warrant Sanctions Under 28 U.S.C. § 1927**

### A. Citrix Reargues Issues that were Decided in the First Appeal but Fails to Identify any Actual Proceeding that was Multiplied.

Citrix's Red Brief ignores this Court's findings in its prior decision and now conflates the arguments made for sanctions in the first sanctions appeal in this appeal masking a second attempt to obtain sanctions that were previously reversed by this Court.  For example, Citrix represents that Orenshteyn's "false testimony" was "pervasive throughout his deposition", but the only support given by Citrix for this broad statement is a reference to the 2003 district court order granting summary judgment.  See Red Br. p. 23.  This district court order was subsequently reversed by this Court in the previous appeal and cannot serve as support for broad unsubstantiated statements by Citrix now.

Citrix continues to reargue matters that were decided against it in the previous appeal. Citrix ignores its own false representations to the district court and to this Court which led to the erroneous claim construction, but was reversed in the previous appeal.

Indeed, the positions taken by both Citrix and the district court indicate that they did not accept the findings and conclusions of this Court in the previous appeal.  For example, in its second order for sanctions the district court stated that "[t]he Federal

1

Circuit disagreed with my claim construction", thereby suggesting that there was a difference of opinion, and not that this Court found the district court's conclusions erroneous. (A1) Citrix also fails to accept this Court's finding regarding Orenshteyn's testimony on the issue of claim construction.

Citrix represented to the district court that in Orenshteyn's deposition testimony that Orenshteyn agreed with Citrix's claim construction citing to the following portions of Orenshteyn's testimony in support:

> Q.   What's a controller?
> A.   A processing element.
> Q.   What's an example?
> A.   A processor, a chip, an integrated circuit.

(A673)

Citrix withheld the next question and response in the testimony presented to the district court because it contradicted the factual representations and arguments Citrix was making to the district court.  When the following question and answer were presented to this Court, this Court concluded that Orenshteyn did not testify in support of Citrix's claim construction:

> Q.   Could a Pentium chip be a controller?
> A.   It could be.

*Orenshteyn v. Citrix Sys., Inc.*, 341 Fed.Appx. 621, 628 (Fed. Cir. July 28, 2009).

This Court found the Orenshteyn's testimony "directly contradicts" Citrix's claim construction. Further, this Court commented that "much of the District Court's dim view of Fink and Johnson's conduct may be attributable to court's erroneous interpretation of Orenshteyn's own view of the correct claim construction of his patent." *Id* at 627.

Citrix now argues that Citrix "took a different view of Orenshteyn's testimony" and that "Citrix had a different interpretation of a witness's testimony and the proper claim construction" from this Court. See Red Br. p. 42. Citrix ignores the fact that it intentionally withheld testimony from the district court that contradicts a position argued by Citrix. In addition, Citrix ignores this Court's holding that Orenshteyn's testimony "directly contradicts" Citrix's proposed claim construction establishes that there was no room for "interpretation" of that testimony. Citrix's continuing failure to accept its culpability for these serious misrepresentations of Orenshteyn's testimony to the district court are evident.

Citrix's conduct is particularly relevant to the "unclean hands doctrine".

More importantly, Citrix's characterization of this matter as "taking a different view" and an "interpretation of a witness's testimony" should make suspect every characterization and representation by Citrix of Orenshteyn's testimony and of the record below.

The only sanctions issue before the district court on remand is whether the failure to correct Orenshteyn's testimony regarding pre-filing investigation conversations "<u>alone</u> multiplied the proceedings to such a degree that sanctions were warranted under section 1927." (emphasis added)  *Orenshteyn v. Citrix Sys., Inc.*, 341 Fed.Appx. at 628.

Citrix alleges that it took almost $197,596.67 in legal fees (reduced by the district court from $296,396.50) and $30,268.14 in costs (denied by the district court) to learn that Orenshteyn lied when he testified that he did not discuss the case with counsel prior to the case being filed.  It is respectfully pointed out that ward by the district court for the entire legal fees which was reversed was $573,838.00.  Thus, Citrix is stating that more than half its legal costs was spent to learn that Orenshteyn spoke to counsel prior to the filing, but Orenshteyn, in fact, did not have any knowledge about Citrix products or infringement theories.

The Federal Circuit noted that it did not appear that this conduct "multiplied the proceedings" yet Citrix has characterized almost every litigation event including the deposition itself as being a proceeding multiplied by the failure to change Orenshteyn's "no" answer to the question of whether he discussed Citrix with his attorneys before the lawsuit was filed to a "yes" answer. *Id.*

Moreover, Citrix represents that Orenshteyn also testified falsely about his pre-filing knowledge of Citrix's products and its infringement of the patents-in-suit.  Yet,

4

there is no evidence cited by Citrix that Orenshteyn testified falsely in this regard and Citrix once again mischaracterizes the record.  The sworn testimony from Orenshteyn during the evidentiary hearing on April 8, 2005 before the District Judge confirms that at the time of his deposition Orenshteyn did not have knowledge about Citrix products or the basis for infringement.  Orenshteyn did not give false testimony at this deposition as to Citrix products and infringement.  Accordingly, there was nothing to correct.  (A3150-3151; A3209-3215).

Citrix has never disputed that testimony Orenshteyn gave during the evidentiary hearing, but Citrix provides its own misinterpretation of Orenshteyn's knowledge to this Court.  The specific excerpts from the evidentiary hearing were clearly set forth in the opposition briefing to the motion for sanctions.  Citrix's prior Rule 11 motion and the district court's first sanctions order were based in part on Orenshteyn **not** having knowledge of Citrix products or its infringement of his patents, and Orenshteyn **not** conducting his own pre-filing investigation, or participating in a pre-filing investigation.  The district court, on Citrix's motion, also sanctioned Fink and Johnson for having minimal contact with Orenshteyn in the pre-filing investigation. This Court reversed both sanctions holding

> [W]e do not see why Fink and Johnson should be sanctioned for their "minimal contact" with Orenshteyn during their pre-filing investigation. Both Fink and Johnson have scientific backgrounds that suggest that they are at least competent in conducting an investigation of this sort, and the district court never truly challenged that ability.

5

*Orenshteyn v. Citrix Sys., Inc.*, 341 Fed.Appx. at 627.    Again Citrix's "interpretation" that Orenshteyn gave false testimony about Citrix products and infringement contradicts the conclusions of this Court's.

### B. The Sanction's Awarded by the District Court have no Nexus to Allegedly Multiplied Proceedings.

The amount awarded as a sanction against Fink and Johnson was not in compliance with this Court's admonition in its remand order because, in part, of Citrix's failure to meet its burden and present reviewable evidence to support the award.  Citrix argues that "it is not necessary for a district court to determine the exact amount of costs actually incurred as a result of the sanctioned conduct".  Red Br. p. 34.  Citrix ignores the remand order of this Court: "if the court does decide that such conduct <u>alone</u> [failure to correct Orenshteyn's testimony regarding pre-filing investigation conversations] merits sanctions, a new determination as to the amount of appropriate sanctions would need to be made as well" and that under "§ 1927, <u>only</u> that portion of the applicable costs, expenses, and fees attributable to the multiplication of the proceedings that resulted from the failure to correct testimony could be awarded". *Id* at 628.  The district court's efforts to comply with this Court's requirements were thwarted by Citrix because Citrix failed to produce reviewable evidence.  Instead, the district court complained that it had to rely on indecipherable block billing and wholesale redactions.  The finding were made by the district court without any input from Fink and Johnson, and Citrix has not appealed the findings

6

of the district court.  Fink and Johnson, however, take issue with the district court arbitrarily choosing a sanction amount without specific support.

The case cited by Citrix in support of its position that the district court is correct and that an arbitrary percentage reduction is acceptable was not addressing the specific nexus requirements of § 1927.  *See Dial HD, Inc. v. ClearOne Commc'ns, Inc.*, 536 F.App'x 927, 931 (11th Cir. 2013).  The block billing and redactions in *Dial HD* were not as pervasive as in this case.  Nevertheless, even in *Dial HD*, the 11th Cir. held that "the fee applicant must provide the district court with detailed evidence about the reasonable hourly rate, as well as records to show the time spent on the different claims and the general subject matter of the time expenditures set out with particularity" and that "where a significant number of entries are severely redacted or it appears that fee counsel has failed to use billing judgment, it may be an abuse of discretion to award fees based on the redacted entries".  (emphasis added) *Id.*

The Eleventh Circuit's holding regarding redactions in fee request coupled with the specific requirements given by this Court on remand should have resulted in no sanctions awarded in this case because of Citrix's failure to meet its burden of presenting reviewable evidence.

The district court found that "Citrix's counsel made extensive use of block billing and heavily redacted its billing records, leaving the Court without the information it needs to determine the hours reasonably incurred as a result of the sanctioned

7

conduct." (A22) (emphasis added). The district court went on to point out that "more than half of the billing entries are redacted without explanation" and these "extensive redactions are particularly puzzling, as Citrix also filed those records under seal." (A22-23). The district court further complained that "[i]n many cases, the redactions render the billing entries meaningless; such as billing entries for telephone conversations with the participants redacted, or for research with the topic obliterated". (A23). Further the "billing records also contain many block billing entries that combine charges for legal services that are covered, and not covered." *Id.* The district court abused its discretion by awarding an arbitrary sanction amount based, in large parts, to Citrix's redactions and block billing contrary to *Dial HD*.

## II. Sanctions Under the District Court's Inherent Powers were Also Unwarranted.

Citrix sought and obtained an order of sanctions against both Orenshteyn and Fink and Johnson under the district court's inherent powers. In their opening brief, Fink and Johnson showed that sanctions based on inherent powers was beyond the mandate of this court and also showed that the district court's reasoning in support of its application of inherent powers is contrary to the mandate of this Court in the prior appeal of this case. In response, Citrix now admits that this Court does not need to separately consider sanctions under the Court's inherent powers. Fink and Johnson, however, respectfully submit that sanctions under the district court's

inherent powers were unwarranted and this Court should reverse the district court's order awarding those sanctions for the reasons provided in the opening brief.

## III.   Due to Citrix's Conduct in this Case, the Doctrine of Unclean Hands Mitigates Against Awarding Sanctions

Ironically, Citrix's response to Fink and Johnson's application of the Doctrine of Unclean Hands continues Citrix's pattern of misrepresenting the facts and the record below.  In response to Citrix's motion for sanctions, Fink and Johnson raised the issue of Citrix's own misconduct in this case and requested the district court to apply the doctrine of unclean hands to mitigate against sanctions sought by Citrix.  Neither Citrix nor the district court addressed this request below.  In addressing it in this Court, Citrix makes the following representation to this Court:

> Fink & Johnson did not distinctly argue this point in the district court; the only reference to it came in **a single perfunctory paragraph** at the end of an unrelated section of their opposition to Citrix's Motion for Sanctions. A3152-53.  The district court did not abuse its discretion by declining to separately address a meritless issue that Fink & Johnson themselves treated at most as an aside. (Red Br. n. 9.) (emphasis added)

Citrix has made a serious false representation of the record below that cannot be justified as Citrix's "interpretation" of Fink and Johnson's brief in opposition to the Motion for Sanctions.  Indeed, Fink and Johnson devoted an entire major section of its opposition brief which took 4 pages of the brief justifying the application of the doctrine of unclean hands. (A3158-3161).  The section and sub-section headings

of the brief included in both the table of contents and the body of the brief are as follows:

VI.    Sanctions Should be Denied Under the Clean Hands Doctrine.

    A.    Citrix Was Repeatedly Admonished by the Court Regarding its Litigation Conduct, Tactics and Arguments.

    B.    Citrix Propounded and Objectively Baseless Claim Construction that was Founded on Egregious Misrepresentations of Fact

(A3144; A3158; A3160).

Despite the prominence of the request by Fink and Johnson, and the substantial briefing that accompanied it, both Citrix and the district court simply ignored it in the proceedings below and Citrix has made an indisputable false representations as the serious nature of this issue to this Court.

Contrary to Citrix's representation, the Fink and Johnson have never argued that application of the clean hands doctrine justifies their conduct. Rather the clean hands doctrine mitigates against rewarding Citrix with sanctions against Fink and Johnson.

It is respectfully pointed out, that upon remand of the case back to the district court, Appellant Fink filed a statement with the district court admitting that he was wrong in failing to correct the single false statement of Orenshteyn in which Orenshteyn stated that he had not discussed the case with counsel before the lawsuit. (A2825-27). Citrix quotes the letter in its brief but once again fails to include entire

10

relevant information. The remainder of the letter to the district court by Appellant Fink requested that the district court not to include his then young partner, Appellant Johnson because Mr. Johnson was not at the deposition, and Appellant Fink was in charge of the case and the decision making with regards to the deposition. That is, Appellant Fink took full and complete responsibility to the matter. The district ignored this request and instead found that as an attorney of record Appellant Johnson was responsible. (A9, n. 3).

The doctrine of unclean hands can be and should be applied in this case against Citrix.

Citrix argues that the statutory basis for the sanctions operates to bar the equitable relief of the doctrine of unclean hands. This assertion is incorrect and no legal support has been cited by Citrix. The application of sanctions under § 1927 is discretionary. The statutes states that a party "may be required by the court...". 28 U.S.C. § 1927. More importantly, however, the Supreme Court has recognized such a flexibility and in *Precision Instrument.*, it went to great lengths to describe the broad application of the doctrine in a case that involved the statutory right to sue and recover for patent infringement. *Precision Instrument v. Automotive Maintenance Machinery*, 324 U.S. 806, 814 (1945). In that case the Supreme Court explained:

> The guiding doctrine in this case is the equitable maxim that "he who comes into equity must come with clean hands." This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith

11

relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be "the abettor of iniquity." ... Thus while "equity does not demand that its suitors shall have led blameless lives,"... as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.

This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." ... Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. <u>Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor.</u>

*Id* (citations omitted)(emphasis added).

In the proceedings below Citrix ignored Fink and Johnson's briefing on this issue and did not address its own substantial misconduct and responsibility for multiplying the proceedings. For the first time in this case Citrix attempts to address the argument by asserting that doctrine of unclean hands cannot be applied by the Court to its conduct. Furthermore, Citrix describes some of its most egregious conduct such as its misrepresentations regarding Orenshteyn's testimony regarding claim construction to the district court and this court as merely an "interpretation" of Orenshteyn's testimony. As illustrated above, there was no room for "interpretation" of Orenshteyn's testimony. This Court found that Orenshteyn directly contradicted Citrix's position in a single answer to a question that Citrix

12

withheld from the district court.  In light of this conduct by Citrix and the other conduct enumerated by Fink and Johnson in their opening brief, the doctrine of unclean hands should be applied it is this case.

## IV.    CONCLUSION

Based on the foregoing and the arguments presented in their Opening Brief, Appellants Fink and Johnson respectfully urge the Court to reverse the award of sanctions against them in this case.

Date: March 16, 2015

Respectfully submitted


/s/ David Fink
David Fink

13

## **CERTIFICATE OF SERVICE**

In accordance with the Federal Rules of Appellate Procedure and Federal Circuit Rule 25, I hereby certify that on March 16, 2015, I caused this Motion to be served via the Federal Circuit's CM/ECF system on counsel of record for the Appellee.

March 16, 2015, Houston, TX

/s/ David Fink
David Fink

Attorney for Appellants

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel for Sanctioned-Attorneys Appellants certifies that the Brief contained herein has a proportional spaced 14-point typeface and contains 3476 words, based on the word count feature of Microsoft Word 2013, including footnotes and endnotes.

Pursuant to Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b), this word count does not include the words contained in the Certificate of Interest, Table of Contents, and Table of Authorities.

Dated: March 16, 2015

Respectfully submitted,


/s/ David Fink
David Fink